**Opinion filed January 31, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-18-00188-CV

_____

## IN THE INTEREST OF D.E.D.L., A CHILD

---

### On Appeal from the 446th District Court
### Ector County, Texas
### Trial Court Cause No. E-17-049-PC

---

## O P I N I O N

The trial court entered an order in which it terminated the parental rights of D.E.D.L.'s parents. The mother filed a request for a trial de novo, and the father filed this appeal. In a single issue on appeal, the father contends that reversal is required pursuant to the Indian Child Welfare Act (ICWA)[1] because no qualified

---

[1]25 U.S.C. §§ 1901–1963. We note that portions of the ICWA were recently declared unconstitutional by a federal district court in Texas. *See Brackeen v. Zinke*, 338 F. Supp. 3d 514, 546 (N.D. Tex. 2018), *appeal docketed*, No. 18-11479 (5th Cir. Nov. 19, 2018). Because an appeal has been filed in *Brackeen* and because the constitutionality of the ICWA was not challenged or addressed in the trial court below, we do not reach any issue related to the constitutionality of the ICWA in this appeal. Nor is this court's opinion to be read to express any opinion as to *Brackeen* or the constitutionality of the ICWA.

expert witness testified at the termination hearing. *See* 25 U.S.C. § 1912(f). We affirm.

D.E.D.L. is an Indian child within the meaning of the ICWA. *See id.* § 1903(4). Therefore, to terminate Appellant's parental rights to D.E.D.L., compliance with the ICWA was mandatory. The particular provision of the ICWA that is at issue in this appeal prohibits the termination of a parent's rights to an Indian child "in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." *Id.* § 1912(f).

Pursuant to the ICWA, the trial court in this case specifically found beyond a reasonable doubt (1) that the Department made active efforts to provide remedial services and rehabilitation programs designed to prevent the breakup of the Indian family and that these efforts proved unsuccessful and (2) that the evidence, including the testimony of a qualified expert witness, demonstrated that the continued custody of D.E.D.L. by Appellant is likely to result in serious emotional or physical damage to D.E.D.L. *See id.* § 1912(d), (f). We note that the trial court also found that grounds for termination existed under Section 161.001(b)(1)(D), (E), and (O) of the Texas Family Code and that termination of Appellant's parental rights was in D.E.D.L.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). On appeal, Appellant does not challenge the findings made pursuant to the Texas Family Code; therefore, we do not address them in this opinion.

The record reflects that the Choctaw Nation of Oklahoma intervened in the proceeding below. The notice of intervention was filed by Penny Drinnon as a representative of the tribe. In the notice of intervention, Drinnon indicated that she was a "Choctaw Nation ICW Specialist." Drinnon participated in the proceedings below and appeared at trial via "Skype." She stated that she was employed "with

2

Choctaw Nation Children and Family Services, Indian Child Welfare," and that she had been working with the family and the Texas Department of Family and Protective Services throughout this case. In her testimony, Drinnon indicated that the Department had complied with the requirements of the ICWA. She specifically testified that there was no appropriate relative placement available for D.E.D.L. at the time of trial and that continued custody with the parents would likely result in serious emotional or physical damage to D.E.D.L.

Appellant argues that no witness, including Drinnon, was designated, certified, or qualified as an expert at trial. Appellant made the same contention during his closing argument to the trial court. The trial court apparently rejected this argument; it found, instead, that "a qualified expert witness" had testified that continued custody of D.E.D.L. by Appellant would result in serious emotional or physical damage to D.E.D.L.

The ICWA does not define "qualified expert witness." However, the Bureau of Indian Affairs has created guidelines for state courts and agencies to use in child custody proceedings that involve an Indian child. *In re V.L.R.*, 507 S.W.3d 788, 796 (Tex. App.—El Paso 2015, no pet.); *In re K.S.*, 448 S.W.3d 521, 529 (Tex. App.—Tyler 2014, pet. denied). Those guidelines provide in relevant part as follows:

**D.4. Who may serve as a qualified expert witness?**

(a) A qualified expert witness should have specific knowledge of the Indian tribe's culture and customs.

(b) Persons with the following characteristics, in descending order, are presumed to meet the requirements for a qualified expert witness:

(1) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.

(2) A member of another tribe who is recognized to be a qualified expert witness by the Indian child's tribe based

3

on their knowledge of the delivery of child and family services to Indians and the Indian child's tribe.

(3) A layperson who is recognized by the Indian child's tribe as having substantial experience in the delivery of child and family services to Indians, and knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

(4) A professional person having substantial education and experience in the area of his or her specialty who can demonstrate knowledge of the prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

(c) The court or any party may request the assistance of the Indian child's tribe or the Bureau of Indian Affairs agency serving the Indian child's tribe in locating persons qualified to serve as expert witnesses.

Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10146-02, 10157 (February 25, 2015).

We hold that the trial court could have determined that Drinnon met the requirements set out in the guidelines and was qualified as an expert witness with specific knowledge of the culture and customs of D.E.D.L.'s tribe. We note that, prior to any testimony, the trial court questioned Drinnon about both her involvement and the tribe's involvement in the case. In the termination order, the trial court explicitly found that "a qualified expert witness" had testified. Although we agree with Appellant that the Department did not specifically designate Drinnon as an expert and that the trial court did not explicitly state that Drinnon was certified or qualified to be an expert witness, we cannot hold that the trial court erred in this regard or that the requirements of Section 1912(f) were not met. Accordingly, we overrule Appellant's sole issue on appeal.

We affirm the trial court's order of termination insofar as it terminated the parental rights of the father.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


January 31, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.